# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

QUASHAY WATERS,                )
                              )
        Petitioner,            )
                              )
vs.                           )        Case No.  CIV-12-894-HE
                              )
MILLICENT NEWTON-EMBRY,        )
Warden,                       )
                              )
        Respondent.            )

## REPORT AND RECOMMENDATION

Petitioner Quashay Waters, a state prisoner appearing pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2254.  Doc. 1.  United States District Judge Joe Heaton referred the matter for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C), and it is now before the undersigned Magistrate Judge. Respondent filed his response to the petition, Doc. 9, together with the relevant state court trial transcript (Tr.), a transcript of the state court suppression hearing (Hr'g Tr.), the original record (OR), and evidence specific to Petitioner's claims of error.  Petitioner replied, Doc. 13, and the matter is at issue.  For the following reasons, the undersigned recommends the denial of habeas relief.

## I.    Background.

### A.    State court.

A jury tried and convicted Petitioner of one count of first-degree felony murder and one count of robbery by fear.  Doc. 9, Ex. 3, at 1.  Based on that

jury's recommendation, she is now serving a sentence of life imprisonment and a consecutive sentence of six years. *Id.* Petitioner appealed, and the Oklahoma Court of Criminal Appeals (OCCA) affirmed her judgment and sentence. *Id.* at 10.[1] In reaching its decision, the OCCA set out the facts surrounding the crimes and the investigation that followed:

> On July 30, 2008, Anthony Parks, an assistant manager for Sonic, deposited the night's receipts at the bank and then went to meet his nineteen-year-old girlfriend, Jessica Perez. Parks pulled into a driveway of a vacant house across the street from the home of Perez's mother at approximately 11:45 p.m. Perez walked across the street and approached the passenger side of Parks' car. At the same time, two people broke away from a group gathered at the corner; one went to the driver side and one met Perez at the passenger side of the car. Perez later identified the person who approached the passenger side as appellant Quashay Waters. Waters eventually identified the man who went to the driver side of the vehicle as Anthony Hopkins. (footnote omitted).

> Waters asked Perez for her cell phone and Perez complied. Hopkins told Perez to undress and get into the car. With a gun pressed to Parks' temple, Hopkins demanded Parks hand over his wallet. The wallet was in a pair of Parks' pants, in the back of the car; Waters entered the car and took the wallet from the pants. Hopkins grabbed the car keys from Parks' lap and told Parks to undress.

> Waters announced that they had what they needed and urged Hopkins that it was time to go. Hopkins agreed, but shortly after Waters turned and started to leave, Hopkins shot Parks in the head. Both assailants fled the scene. Though the police came quickly, Parks was dead before he arrived at the hospital.

---

[1]     Petitioner did not seek state-court post-conviction relief. Doc. 9 at 2.

On September 15, 2008, OSBI, [the Oklahoma State Bureau of Investigation], identified one of four usable fingerprints recovered from the roof of Parks' Jeep, twelve inches above the right rear door, as belonging to the right middle finger of Quashay S. Waters. On the morning of October 9, 2008, Del City Detectives showed Perez a photographic array containing a picture of Waters. Perez identified Waters in the photo array. After obtaining the positive identification, three Del City Detectives and one Captain went to the Oklahoma City home of Waters' mother. The detectives had developed a ruse, based upon a minor traffic accident in which Waters was a passenger, to lure Waters into voluntarily going to the Del City Police Station. Believing that the detectives wished to speak with her about that accident, Waters agreed to go to the police station. Because she did not have a car of her own, she agreed to accompany the police in their unmarked police car. Waters ultimately confessed to participating in the planning of the robbery and to owning the gun that was used in the felony murder.

*Id*. at 2-4.

## B.    Federal court.

In this Court, Petitioner maintains she is entitled to habeas relief as a result of each of seven errors, all of which were rejected by the OCCA: (1) the trial court should have suppressed her statements to authorities (a) because her arrest was unlawful and (b) because her statements were involuntary; (2) her double jeopardy rights were violated; (3) the evidence was insufficient to support a conviction for felony murder; (4) the trial court failed to instruct the jurors on how to use the state's evidence of other crimes; (5) the trial court admitted a prejudicial photograph; (6) her sentence was excessive; and (7) her trial counsel was ineffective because he failed to preserve error for appellate review. Doc. 1.

## III.  Standard of review.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted."). A petitioner is entitled to federal habeas relief only if that merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, 28 U.S.C. § 2254(d). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 131 S. Ct. at 786.

This Court first determines "whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at

the time of the state court judgment." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). Clearly established law consists of Supreme Court holdings where the facts are similar to the facts in the petitioner's case. *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." *Id.* at 1018. So, only if this Court answers "affirmatively the threshold question as to the existence of clearly established federal law, may it inquire whether the state court decision is either contrary to or an unreasonable application of such law." *Id.*

If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *Bland*, 459 F.3d at 1009. "A decision is 'contrary to' clearly established federal law . . . if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts . . . materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the result reached by the Supreme Court." *Id.* (quotations omitted) (alterations in original). "A state court decision involves an 'unreasonable application' of federal law if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Id.* (quotation omitted) (alteration in original). "As a condition for obtaining federal habeas relief, . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

Throughout the analysis, the court must presume the state court's factual findings are correct unless the petitioner rebuts that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV. Analysis.

### A. Petitioner's confession.

#### 1. Petitioner's claims.

Challenging the trial court's decision to admit her statements confessing to her participation in the planning and execution of the robbery, Petitioner raises two claims of error, one invoking the Fourth Amendment and the other, the Fifth and Fourteenth.

First, she argues that the confession she gave to the Del City authorities was the fruit of a warrantless, unlawful arrest and should have been suppressed under the Fourth Amendment. Doc. 1, at 3-5. Second, Petitioner raises Fifth and Fourteenth Amendment claims, *id.* at 5-6, maintaining, in part, that she

waived her *Miranda*[2] rights in the belief she was to be questioned about a traffic accident, not a murder. *Id.* at 6. She then points to post-waiver promises by the detectives to help her if she cooperated and to threats of consequences if she did not. *Id.* She argues that "[t]he Del City detectives' lies of promises and threats rose to the level of compulsion and coercion that resulted in a coerced confession."[3] *Id.* at 7.

## 2. The OCCA's findings.

We find . . . that Waters was lawfully arrested in Del City, where the detectives had proper jurisdiction. Furthermore, though we concur with the concerns of the trial court concerning the tactics used by Del City Detectives Abel and Wofford, we affirm the reasoning and ultimate conclusion of the trial court finding that, considering the totality of the circumstances surrounding the statements, the will of the defendant in this case was not overborne. *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. ED.2d 908 (1964); *Young v. State*, 2008 OK CR 25, ¶ 19, 191 P.3d 601, 607. We note that the detectives walked very close to the line with their promises to help Waters if she would help herself and confess. However, Waters was twenty-one years old; she had been arrested twice before; and she reviewed her Miranda rights with the detectives in detail before signing the waiver. Furthermore, the video taped confession supports the trial court's conclusion that there was a willing, narrative nature to Waters' statement. Finally,

---

[2] A suspect, prior to a custodial interrogation, must "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 383 U.S. 436, 444 (1966).

[3] Petitioner seeks habeas relief with regard to the voluntariness of her statements to the Del City detectives on October 9, 2008, the day she accompanied the Del City authorities to their station. Doc. 1, at 5-7.

there was no specific promise offered in exchange for her confession and the detectives did follow through on their promise to communicate with the State that Waters was cooperative. *See McCarty v. State*, 1995 OK CR 48, ¶ 34, 904 P.2d 110, 121 ("While promises of leniency are certainly to be considered in determining whether a statement was given voluntarily, such are not necessarily dispositive of the issue. Rather, a determination of voluntariness must be made by a review of the totality of the surrounding circumstances, including the characteristics of the accused and the details of the interrogation.")(citing *Schneckloth v. Bustamonte*, 412 U.S. 218,93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Turner v. State*, 1990 OK CR 79, ¶¶ 16-17,803 P.2d 1152, 1158 (Okl.Cr.1990), *cert. denied*, 501 U.S. 1233, 111 S.Ct. 2859, 115 L.Ed.2d 1026 (1991)).

Doc. 9, Ex. 3, at 4-5.

### 3. Evaluation of the claims.

#### a. Lawfulness of the arrest -- the Fourth Amendment.

Under Supreme Court law, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment Claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). "Opportunity for full and fair consideration includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim," a "full and fair evidentiary hearing," and "at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978) (quotation and

footnote omitted).

Petitioner does not assert – nor can she – that such an opportunity was not provided. The District Court of Oklahoma County conducted a *Jackson v. Denno*, pre-trial evidentiary hearing regarding the voluntary nature of Petitioner's confession and the circumstances of her arrest. Hr'g Tr.; *see* 378 U.S. 368 (1964). Petitioner then raised her Fourth Amendment unlawful arrest claim on direct appeal, which the OCCA rejected. Doc. 9, Ex. 3, at 1, 4-5. *Stone* precludes this Court's consideration of Petitioner's Fourth Amendment claim that the statements she made to the Del City authorities were the fruits of a warrantless, unlawful arrest. 428 U.S. at 494.

### b. Voluntariness of the confession -- the Fifth and Fourteenth Amendments.

The law is clearly established that no person can be forced to be a witness against herself in a criminal case. *Miranda*, 384 U.S. at 460-61; *see also Malloy v. Hogan*, 378 U.S. 1, 6 (1964) (holding "that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States."). A suspect's waiver of this privilege against self-incrimination is valid only if it is made "voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. Nonetheless, "a suspect's awareness of all the possible subjects of questioning in advance of

interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived [her] Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 577 (1987).

It is also clearly established "that a defendant in a criminal case is deprived of due process of law if [her] conviction is founded, in whole or in part, upon an involuntary confession . . . ." *Denno*, 378 U.S. at 376. A suspect's confession is involuntary "if [her] will has been overborne and [her] capacity for self-determination critically impaired . . . ." *Schneckloth*, 412 U.S. at 225-26. "In determining whether a [suspect's] will was overborne," the court examines "the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation."[4] *Id*. at 226. The totality of the

---

[4]      Petitioner's habeas petition and brief reveals her awareness of the need to demonstrate that the OCCA unreasonably applied federal law. *See* Doc. 1, at 4. Nonetheless, she cites no to any federal holding that she maintains the OCCA unreasonably applied.

While Petitioner acknowledges that the voluntariness of her confession is measured by the totality of the circumstances, *id*. at 5, 7, in her reply brief, Petitioner includes a fleeting reference to *Bram v. United States*, 168 U.S. 532, 542-43 (1897), which held that a confession cannot be "obtained by an[y] direct or implied promises, however slight, [n]or by the exertion of any improper influence." Doc. 13, at 2. As Respondent points out, however, Doc. 9, at 11, the Supreme Court subsequently noted that "under current precedent" this quotation "from *Bram* . . . does not state the standard for determining the voluntariness of a confession." *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991) (applying the totality of the circumstances test to determine if a confession was coerced).

circumstances includes "the crucial element of police coercion," "the length of the interrogation" and "its location," "the defendant's maturity," "education," "physical condition," and "mental health." *Withrow v. Williams*, 507 U.S. 680, 693 (1993). Ultimately, the question is whether the confession was "the product of an essentially free and unconstrained choice . . . ." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961).

Here, the OCCA considered "the totality of the circumstances surrounding [Petitioner's] statements," and determined that Petitioner's will was not overborne and that her confession – made after an informed waiver of her *Miranda* rights – was voluntary. Doc. 9, Ex. 3, at 4. The undersigned, following a careful review of the record, concludes such determination was a reasonable application of controlling Supreme Court precedent.

First, to the extent Petitioner maintains her confession was tainted because when she "waived her rights it was in the context of the traffic accident," Doc. 1, at 6, the video recording of the October 9, 2008 confession reveals that after a detective read Petitioner her *Miranda* rights, Petitioner asked if the detectives wanted to talk about the wreck. The detective stated they were going to talk about a lot of things. Petitioner signed the waiver form, and the detectives then informed her they were there to talk about a murder. Petitioner did not invoke her *Miranda* rights at that point or at any point thereafter.

In seeking habeas relief, Petitioner does not claim she "failed to understand the basic privilege guaranteed by the Fifth Amendment" or "that [she] misunderstood the consequences of speaking freely to the law enforcement officials." *Spring*, 479 U.S. at 575. Rather, she suggests her confession was not voluntary because she waived her rights in the belief that she was to be questioned about a traffic accident. Doc. 1, at 6; Doc. 13, at 2. Nonetheless, "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring*, 497 U.S. at 574. "[T]he failure of the law enforcement officials to inform [Petitioner] of the subject matter of the interrogation could not affect [Petitioner's] decision to waive [her] Fifth Amendment privilege in a constitutionally significant manner." *Id.* at 577.

Regarding Petitioner's claim that the investigating detectives coerced her post-waiver confession through threats and promises, the OCCA, "considering the totality of the circumstances," found that: (1) "the detectives walked very close to the line with their promises to help [Petitioner] if she would help herself and confess"; (2) Petitioner was twenty-one years old at the time of her confession; (3) Petitioner had been arrested two times prior to this occasion; (4) Petitioner reviewed her *Miranda* rights in detail before waiving those rights; (5) the video of the confession "supports the trial court's conclusion that there was

a willing, narrative nature to [Petitioner's] statement"; (6) the detectives offered no specific promise in exchange for her confession; and, (7) the Del City detectives followed through with their promise to convey to the State that Petitioner was cooperative. Doc. 9, Ex. 3, at 4.

A review of the video of Petitioner's October 9, 2008 interview establishes that the Del City detectives repeatedly and systematically urged Petitioner to help herself by telling the truth, but they stopped short of making a specific promise of leniency to extract a confession. Instead, the detectives' statements – things would work out better for Petitioner if she talked; lying would only hurt her; help us help you; she could help herself by talking about it; if she did not talk about what happened, it would be much harder on her – were vague and non-specific assurances she would help herself by talking. The detectives never promised Petitioner that lesser charges would be brought against her or that she would receive a particular sentence if she talked about what had happened and identified her co-participants. They did tell Petitioner it would be better in the eyes of the district attorney if she was honest, and Petitioner does not challenge the state court's factual finding that the detectives followed "through on their promise to communicate with the State that [Petitioner] was cooperative." Doc. 9, Ex. 3, at 4; Doc. 1, at 5-7; Doc. 13, at 1-4. In addition, there is no indication that Petitioner's personal characteristics – her maturity, mental health, physical

health – in any manner affected the freedom of her decision to confess. Petitioner – arrested on two previous occasions – readily engaged and challenged the detectives throughout the process. While the video record supports Petitioner's assertion that the detectives repeatedly exhorted her to help herself by not lying and to start talking, "[t]he taped interrogation itself reveals no action by the interviewing officers that would support a finding of coercion sufficient to overcome [Petitioner's] understanding of [her] *Miranda* rights." *Mitchell v. Gibson*, 262 F.3d 1036, 1059 (10th Cir. 2001).

The OCCA used the correct standard in determining that "the will of the [Petitioner] in this case was not overborne." Doc. 9, Ex. 3, at 4. Petitioner has failed to establish that this determination was contrary to or an unreasonable application of clearly established federal law. Therefore, she is not entitled to relief on this claim.

### B. Double jeopardy.

#### 1. Petitioner's claim.

Petitioner, who was convicted and sentenced for the robbery/murder of one victim and for the robbery of another victim, maintains she "was sentenced twice for the same conduct in violation of double jeopardy." Doc. 1, at 8. She argues that "[t]he evidence pointed out the fact they were robbing the Jeep" *id.* at 7-8, and that "[t]he intent was not to focus on [the] individuals" who were each robbed. *Id.* at 8.

#### 2. The OCCA's findings.

> We find . . . that there was no violation of 21 O.S. 2001, § 11 or of Waters' rights against double jeopardy as a result of her convictions for Felony Murder (Robbery), 21 O.S.Supp.2006, § 701.7(B) of Anthony Parks, and Robbery by Fear, 21 0.8.2001, § 791 of Jessica Perez. Addressing the Section 11 claim, we focus on the relationship between the crimes. Where multiple crimes "truly arise out of one act," prosecution for more than one crime is prohibited by Section 11, unless there is specific legislative intent directing otherwise. *Davis v. State*, 1999 OK CR 48, ¶ ¶12-13, 993 P.2d 124, 126-127. Multiple crimes may be charged where a defendant commits a series of separate and distinct crimes in one series or transaction. *Ziegler v. State*, 1980 OK CR 23, ¶¶ 9-10, 610 P.2d 251, 253-54.
>
> Waters robbed two individuals and committed two separate and distinct crimes. If Waters and Hopkins stole the contents of the car, and/or stole the car, only one crime would have been committed. Here, however, Hopkins took Parks' phone and car keys. Waters took the Blackberry and snack food belonging to Perez, and also took Parks' wallet.

> [I]t has long been part of our jurisprudence that, where crimes against the person are involved, even though various acts are part of the same transaction, they will constitute separate and distinct crimes where they are directed at separate and distinct persons. Temporal and/ or spatial proximity or the fact that the weapon used was, or was not, identical, are not material.

> *Jennings v. State*, 1973 OK CR 74, ¶ 15, 506 P.2d 931, 935 (no double jeopardy violation where defendant was prosecuted for two counts of assault with a dangerous weapon against different victims)(citations omitted). *See also Orcutt v. State*, 52 Okl. Cr. 217, 225-26. 3 P.2d 912, 915-16 (1931) (recognizing robbery as a crime against the person and holding that there are no double jeopardy concerns where a defendant is charged with two counts of robbery where two individuals were robbed at the same time and place in one incident).

> The double jeopardy challenge fails for the same reason. Two crimes were committed. *Id.* "'The fact [that] the crimes were committed in rapid succession does not negate the ultimate fact that separate crimes were committed. To hold otherwise would open the door for persons to commit any number of crimes simultaneously, knowing they could only be punished for one.'" *Wilson v. State*, 1973 OK CR 43, ¶ 10, 506 P.2d 604, 607 (where defendant was prosecuted for assault and battery with a dangerous weapon and attempted assault and battery with a dangerous weapon in the same course of conduct, no double jeopardy violation) (*quoting Kupiec v. State,* 1972 OK CR 21, ¶ 5, 493 P.2d 444, 446) (quotation omitted)).

Doc. 9, Ex. 3, at 5-6.

### 3.     Evaluation of the claim.

The Fifth Amendment's Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the

same offense after conviction, and multiple punishments for the same offense.[5]
*See Jones v. Thomas*, 491 U.S. 376, 380-81 (1989). This Court's *review* of a
multiple-punishment-double-jeopardy claim is limited to determining whether
the sentencing court imposed a greater punishment than the legislature
intended. *See Brown v. Ohio*, 432 U.S. 161, 165 (1977) ("Where consecutive
sentences are imposed at a single criminal trial, the role of the constitutional
guarantee is limited to assuring that the court does not exceed its legislative
authorization by imposing multiple punishments for the same offense."). To
assess "whether two offenses are sufficiently distinguishable to permit the
imposition of cumulative punishment," *id.* at 166, the Supreme Court directs
that "where the same act or transaction constitutes a violation of two distinct
statutory provisions, the test to be applied to determine whether there are two
offenses or only one is whether each provision requires proof of an additional
fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304
(1932).

The jury instructions set forth the elements of first-degree felony murder
– with robbery with a dangerous weapon serving as the predicate felony – and
robbery by fear. The jury instructions identified elements of first-degree felony

_____

[5]    The Double Jeopardy Clause is applicable to the States by virtue of
the Fourteenth Amendment's Due Process Clause. *See Smith v. Dinwiddie*, 510
F.3d 1180, 1187 (10th Cir. 2007).

murder as:

>First, the death of a human;

>Second, occurring as a result of an act or event which happened in the defendant's commission of a robbery with a dangerous weapon;

>Third, the elements of which are:

>>First, wrongful;
>>Second, taking;
>>Third, carrying away;
>>Fourth, personal property;
>>Fifth, of another;
>>Sixth, from the person of Anthony Parks;
>>Seventh, by force or fear;
>>Eighth, through use of a loaded pistol.

OR 288-89.

Petitioner's jury was further instructed that the elements of robbery by fear are:

>First, wrongful;

>Second, taking;

>Third, carrying away;

>Fourth, personal property;

>Fifth, of another;

>Sixth, from the person of Jessica Perez;

>Seventh, by fear.

*Id.* at 291.

Each of these crimes "requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. One required proof that the deceased victim was robbed by Petitioner and the other required proof that the surviving victim was robbed by Petitioner. With respect to the OCCA's conclusion that there are no multiple-punishment double jeopardy concerns where Petitioner robbed two individuals and thus committed two separate and distinct crimes, "if the highest court of a state determines that the legislature intended to punish separate offenses cumulatively, a federal habeas court must defer to that conclusion." *Cummings v. Evans*, 161 F.3d 610, 615 (10th Cir. 1998) (quotation omitted); *see also Mansfield v. Champion*, 992 F.2d 1098, 1100 (10th Cir. 1993) ("In a habeas corpus proceeding under section 2254, a federal court should defer to a state court's interpretation of state law in determining whether an incident constitutes one or more than one offense for double jeopardy purposes."). Under Oklahoma law, "[w]here two individuals are robbed of separately owned property at the same time and place as in one incident, two robbery offenses are committed, and no double jeopardy problems arise." *Id.* at 1101 (citing *Orcutt*, 3 P.2d at 915). "In light of the Oklahoma appellate court's interpretation of the state robbery statute, the federal district court should conclude that the legislature had intended to allow multiple criminal penalties when an individual robbed two individuals at the same place and in rapid succession." *Petzold v.*

*Jones*, 619 F. Supp. 2d 1143, 1151 (W.D. Okla. 2008).

For these reasons, the OCCA's decision is neither contrary to nor an unreasonable application of federal law.

### C. Sufficiency of the evidence to support a conviction for felony murder.

#### 1. Petitioner's claim.

Petitioner maintains the evidence was insufficient to support her first-degree felony murder conviction. Doc. 1, at 8-9. She challenges the OCCA's determination that the facts established the required nexus between the underlying felony of robbery and the death of the victim, Anthony Parks. According to Petitioner, the facts established she was leaving when the robbery was completed and that it was the "agenda" of Anthony Hopkins "to commit malice murder." *Id.* at 9.

#### 2. The OCCA's findings.

[This p]roposition . . . has no merit and is therefore denied. The nexus between the robbery with a firearm and the felony murder conviction was sufficient and Waters' conviction for felony murder was supported by the evidence. The standard for this Court's review of a sufficiency challenge is very deferential. We ask, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Spuehler v. State,* 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04. A nexus between the underlying felony of robbery and the death of the victim, Anthony Parks, may be found in the following facts: Waters planned the robbery with Hopkins, supplied the gun, and

participated in the robbery as Hopkins stood with the gun pressed to Parks' head. This is true despite the fact that Waters did not hold the gun in the robbery and despite the fact that she was beginning to walk away when Hopkins fired the shot that killed Parks. The State did not have to prove that Waters and Hopkins agreed to kill one of their victims. Rather, the jury had to find that Waters and Hopkins knowingly engaged in a felony which was inherently or potentially dangerous to human life, and that the felony and the subsequent murder were part of one continuous transaction. *Stiles v. State*, 1992 OK CR 23, ¶ 28, 829 P.2d 984, 991. See 21 O.S. 2006 Supp. 701.7(B) ("A person also commits the crime of murder in the first degree, *regardless of malice*, when that person or any other person takes the life of a human being during, or if the death of a human being results from, the commission or attempted commission of ... robbery with a dangerous weapon .... ")(emphasis added). The fact that Parks was shot was certainly a "foreseeable risk[]" of Waters participating in a robbery of Parks with a loaded gun. *Hatch v. State*, 1983 OK CR 47, ¶ 32, 662 P.2d 1377, 1384, *cert. denied*, 474 U.S. 1073, 106 S. Ct. 834, 88 L.Ed.2d 805 (1986).

Doc. 9, Ex. 3, at 6-7.

### 3.    Evaluation of the claim.

The United States Supreme Court clearly established the constitutional right to sufficient evidence of guilt in *Jackson v. Virginia.* 443 U.S. 307, 324 (1979); *see Lott v. Trammel*, 705 F.3d 1167, 1219 (10th Cir. 2013) (agreeing that *Jackson* provided "the clearly established law applicable to [an insufficient evidence] claim"). Under this decision, "[t]he evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (quoting *Jackson*, 443 U.S. at 319).[6]

Here, the OCCA rejected Petitioner's claim of insufficient evidence to support a felony murder conviction on the merits. Doc. 9, Ex. 3, at 6-7. Thus, under a "twice-deferential standard," *id.*, this court's "review is limited to deciding whether the OCCA's decision[] that there was sufficient evidence to support a jury's finding of . . . felony murder . . . w[as] contrary to or an unreasonable application of *Jackson*." *Spears v. Mullin*, 343 F.3d 1215, 1238 (10th Cir. 2003).

"Oklahoma law provides the substantive elements of . . . felony murder applicable to the sufficiency of the evidence standard." *Id*.; *see also Jackson*, 443 U.S. at 324 n.16 ("[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."). Under Oklahoma law, "[a] person . . . commits the crime of murder in the first degree, regardless of malice, when that person or any other person takes the life of a human being during, or if the death of a human being results from, the

---

[6]     That the state court did not cite *Jackson* is irrelevant to the equation. *See Black v. Workman*, 682 F.3d 880, 892 (10th Cir. 2012) ("It is not necessary that the state-court decision cite applicable Supreme Court decisions. 'Indeed, it does not even require awareness of Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation and internal brackets omitted).

commission . . . [o]f robbery with a dangerous weapon . . . ." *See* Okla. Stat. tit. 21, § 701.7(B).

The OCCA determined under Oklahoma law that the nexus between robbery with a firearm and Petitioner's felony murder conviction was sufficient. Doc. 9, Ex. 3, at 6-7. In making this determination, the court found as fact that Petitioner planned the robbery with Anthony Hopkins; she supplied the gun; and, she "participated in the robbery as Hopkins stood with the gun pressed to Parks' head." *Id.* at 7. According to the OCCA's interpretation of Oklahoma law, the nexus was present although Petitioner "did not hold the gun in the robbery and despite the fact she was beginning to walk away when Hopkins fired the shot that killed Hopkins." *Id.* Finding "[t]he fact that Parks was shot was certainly a 'foreseeable risk[]' of [Petitioner] participating in a robbery of Parks with a loaded gun," the OCCA cited to its interpretation of the first-degree murder statute in *Hatch v. State*, 662 P.2d 1377, 1384 (Okla. Crim. App. 1986). *Id.* (citing *Hatch*, 662 P.2d at 1384). In *Hatch*, the OCCA stated:

> The legislature's definition of murder in 701.7(B) is a reflection of the policy that one who, by his wilfull criminal conduct, sets in motion a chain of events so perilous to the sanctity of human life that death results therefrom; must bear the ultimate responsibility for his actions. We agree with the legislature that murders effected in such a manner are as abhorrent as those which are premeditated. Proscribing such actions under our first-degree murder statutes performs the rational function of deterring the commission of felonies so inherently dangerous as to create

23

forseeable risks of death.

This interpretation of state law is binding on this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *United States v. Unser,* 165 F.3d 755, 766-67 (10th Cir. 1999) (agents employed a "measure of subterfuge" by inducing defendant to return to their offices when defendant did not know he was the target of a criminal investigation, and defendant believed officers merely wanted to help him retrieve his snowmobiles; nonetheless, defendant's will was not overborne and statements were admissible); *Lucero v. Kerby,* 133 F.3d 1299, 1311 (10th Cir.1998) (holding that defendant's inculpatory statements were admissible even though officer made "false statements about fingerprint evidence found" at the crime scene, because "such misrepresentations, without more, do not render an otherwise voluntary confession involuntary"). To the extent the OCCA's decision relied on factual findings to determine that the nexus between the robbery with a firearm and the felony murder conviction was sufficient, the factual findings are objectively reasonable, *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003), and presumed to be correct. *See* 28 U.S.C. § 2254(e)(1). Finally, the OCCA applied the correct legal standard in determining whether the evidence was sufficient to support a conviction for first-degree felony murder. Accordingly, Petitioner's request for habeas relief on this ground is unavailing.

## D. Evidence of other crimes.

### 1. Petitioner's claim.

Here, Petitioner alleges her rights under the Fourteenth Amendment were violated by the trial court's failure to instruct the jury, sua sponte, about the limited purpose of other crimes evidence. Doc. 1, at 10.

### 2. The OCCA's findings.

[W]e do not find that the court committed plain error by failing to issue [an i]nstruction . . . to guide the jury on how to use the evidence that Waters pawned Perez's Blackberry with a fraudulent and illegal declaration of ownership. (footnote omitted). *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923 (citations omitted). The trial court permitted the evidence relating to the pawned Blackberry to establish motive and intent and as evidence identifying Waters in the commission of the robbery. The pawn slip was indeed very powerful evidence of motive and identity, bolstering the pre- and in-court identifications of Waters by Perez.

Though it is true that the jury should not have considered the evidence that Waters falsified ownership documents as proof of bad character, this "other crime evidence" is so different in nature and gravity than the offenses charged, it is not likely that the jury would find the former evidenced the character or propensity to commit the latter. If anything, an instruction would have further highlighted the evidence. Failure to request such an instruction may well have been a strategic choice by counsel. One cannot say that the failure to give the instruction in any way affected the outcome of the trial. *Hogan*, 2006 OK CR 19, 1 38, 139 P.3d at 923 (citations omitted).

Doc. 9, Ex. 3 at 8.

### 3. Evaluation of the claim.

25

Petitioner's claim regarding the trial court's failure to give a limiting jury instruction on the use of other crimes evidence is a matter of state law and is not cognizable in federal habeas. *See* 28 U.S.C. §2254(a); *Brecheen v. Reynolds*, 41 F.3d 1343, 1355 (10th Cir. 1994). "As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citation omitted). The fact that "[an] instruction [is] allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Where the claim is premised on failing to give a certain instruction, Petitioner's burden is even heavier, because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Petitioner contends that because the trial court failed to instruct her jurors on the proper use of evidence she had falsified documents, those jurors could "use[] it for evidence of bad character," violating her Fourteenth Amendment rights. Doc. 1, at 10. The OCCA agreed that the jurors should not have considered this evidence as proof of Petitioner's bad character. Doc. 9, Ex. 3, at 8. Nonetheless, the OCCA concluded that in light of the differences "in nature and gravity" between the other crime at issue here – falsification of a pawn slip – and the offenses

charged, the jury was not likely to "find the former evidenced the character or propensity to commit the latter." *Id.* According to the OCCA , "[o]ne cannot say that the failure to give the instruction in any way affected the outcome of the trial." *Id.*

Petitioner – who is not arguing that there was  any misstatement of the law – has failed to demonstrate the requisite fundamental unfairness.  Under the facts of  this case, failure to give a specific instruction relating to the limited use of other crimes evidence did not deprive Petitioner of a fair trial.

### E.    Photograph.

#### 1.    Petitioner's claim.

Petitioner challenges the admission of a color photograph of the gunshot wound to the deceased victim's head.  Doc. 1, at 11.  She argues that "[t]he introduction of the photo was unnecessary inflaming the jury by gruesomeness of the image and inhibiting Waters' right to a fair trial." *Id.*  Likewise, she submits that "[t]his evidence was cumulative" because there was witness testimony that the victim had been shot at close range and "[t]he medical examiner testified concerning the fatal injury." *Id.*

#### 2.    The OCCA's findings.

We find . . . that the trial court did not abuse its discretion by admitting the single photograph of the gunshot wound to Parks' head. *Romano v. State*, 1995 OK CR 74, ¶ 45, 909 P.2d 92, 114. The

photograph was clearly relevant to show the nature and location of the wound and to corroborate the testimony of the medical examiner. The probative value of the photograph outweighed any minimal prejudice that might have resulted from viewing the photograph. *Smith v. State*, 1996 OK CR 50, ¶ 26, 932 P.2d 521, 531.

Doc. 9, Ex. 3 at 9.

### 3. Evaluation of the claim.

"[D]ue process arguments relating to the admissibility of . . . autopsy photos . . . will not support habeas relief 'absent fundamental unfairness so as to constitute a denial of due process of law.'" *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998) (citation omitted). In *Shanks*, the Tenth Circuit rejected a federal habeas challenge to the trial court's admission of "admittedly unpleasant" photographs, concluding "the photographs illuminated and clarified the forensic pathologist's testimony." *Id.* Here, the OCCA similarly held that the challenged photograph was "relevant to show the nature and location of the wound and to corroborate the testimony of the medical examiner." Doc. 9, Ex. 3, at 9. As in *Shanks*, Petitioner "forward[s no] persuasive reasons why [this court] should disturb that ruling," 143 F.3d at 1322, and she is not entitled to habeas relief on this claim.

### F.  Excessive sentence.

#### 1.  Petitioner's claim.

Petitioner submits she received a more severe sentence than her co-defendants.  Doc. 1, at 12.  She urges that "[t]he arbitrary application of the law by the state is a miscarriage of justice and violation of equal treatment under the Fourteenth Amendment."  *Id.*

#### 2.  The OCCA's findings.

> This Court recognizes that the sentence in this case is weighty, however, the crimes planned and committed by Waters were as well.  Though she did not pull the trigger in the murder of Anthony Parks, Waters did supply the gun and participate in the robbery.  While she turned to leave when the shot was fired, Waters did stand and engage in the robbery as her co-defendant held the gun to Parks' head.  Considering the facts and circumstances of this case we cannot find that the sentence, well within the guidelines for the offenses, was excessive, and  for this reason [this p]roposition . . . is denied.  *Rea v. State*, 2001 OK CR 28, ¶ 5 and n.3, 34 P.3d 148, 149 and n.3.

Doc. 9, Ex. 3, at 9.

#### 3.  Evaluation of the claim.

In the Tenth Circuit, habeas courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence is outside the statutory limits or unauthorized by law."  *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000).  The OCCA determined the sentence "well within the

guidelines for the offenses" and, on federal habeas review, Petitioner makes no claim that her sentence is outside the range of punishment set by the Oklahoma legislature for her crimes. Doc. 9, Ex. 3, at 9; Doc. 1, at 12. Accordingly, habeas relief is not warranted on this claim.

### G. Ineffective assistance of trial counsel.

#### 1. Petitioner's claims.

Petitioner contends her trial counsel "was ineffective failing to preserve error for appellate review." Doc. 1, at 13. She claims her counsel "failed to raise objection to two counts of robbery subjecting Waters to double jeopardy" and "failed to object to court's failure to instruct jurors to use of other crimes evidence as well as other errors resulted in a lapse of representation resulting in an unfair trial to Waters." *Id.*

#### 2. The OCCA's findings.

> [W]e find no merit to the claim that counsel was ineffective. We found no error in the claims addressed to this Court, and counsel cannot be deemed ineffective if his client was not prejudiced by his performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052,2064, 80 L.Ed.2d 674 (1984).

Doc. 9, Ex. 3, at 9.

#### 3. Evaluation of the claims.

For claims involving ineffective assistance of counsel, the Supreme Court "clearly established" federal law in *Strickland,* 466 U.S. at 690-91. There the

30

Court held that a petitioner must show that the attorney's performance was constitutionally deficient and prejudicial. *Id*. at 690-92. An attorney's performance is only considered "deficient" if it falls "outside the wide range of professionally competent assistance." *Id*. at 690. "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Petitioner claims her trial counsel failed to object both to the charges against her on double jeopardy grounds and to the trial court's failure to instruct the jury on the use of evidence of other crimes. Doc. 1, at 13. According to Petitioner, her trial "counsel was ineffective [by] failing to preserve error for appellate review." *Id*. Petitioner's argument is inherently flawed. The OCCA addressed both of these underlying claims of error on appeal, finding them to lack merit. Doc. 9, Ex. 3, at 5-6, 8. And, as the OCCA – citing *Strickland,* 466 U.S. at 687 – found, "counsel cannot be deemed ineffective if his client was not prejudiced by his performance." *Id*. at 9.

## V. Recommendation and notice of right to object.

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the petition for writ of habeas corpus be denied. The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by the 23rd day of October, 2013, in accordance with

28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

DATED this 3rd day of October, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE